UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RYAN D. GURNETT,

                    Plaintiff,

v.

                    Case # 16-CV-955-FPG

                    DECISION AND ORDER

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

## INTRODUCTION

Ryan D. Gurnett brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied his application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405 (g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 12, 16. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On April 28, 2013, Gurnett applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 262-63. He alleged disability since April 4, 2013 due to fibromyalgia. Tr. 279. On May 21, 2015, Gurnett and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge Stephen Cordovani ("the ALJ"). Tr. 145-200.

---

[1] References to "Tr." Are to the administrative record in this matter. ECF. No. 9.

On June 25, 2015, the ALJ issued a decision finding that Gurnett was not disabled within the meaning of the Act. Tr. 130-40. On October 27, 2016, the Appeal Council denied Gurnett's request for review. Tr. 1-7. Thereafter, Gurnett commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARDS

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(4)(c). If the claimant does not have a severe impairment or combination of impairments that is severe, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Gurnett's claim for benefits under the process described above. At step one, the ALJ found that Gurnett had not engaged in substantial gainful activity since the alleged onset date. Tr. 132. At step two, the ALJ found that Gurnett has the following severe impairments: depression, anxiety, bipolar disorder, myalgia, and mytosis. Tr. 132-34. At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 134-35.

Next, the ALJ determined Gurnett retained the RFC to perform light work[2] in a low stress environment.[3] Tr. 135-39. At step four, the ALJ relied on the VE's testimony and found that this RFC prevents Gurnett from performing his past relevant work as a claims processor, data entry clerk, pharmaceutical order clerk, and customer service coordinator. Tr. 139. At step five, the ALJ relied on the VE's testimony and found that Gurnett can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 139-40. Specifically, the VE testified that Gurnett could work as a merchandise marker and mail sorter. Tr. 140. Accordingly, the ALJ concluded that Gurnett was "not disabled" under the Act. *Id.*

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[3] Low stress environment is defined as "the ability to understand, remember and carry out simple instructions and tasks, with no supervisory duties or independent decision making required, no strict production quotas and minimal changes in work routine and processes." Tr. 135.

**III. Analysis**

Gurnett argues that remand is required because the Appeals Council erred when it failed to consider new evidence submitted after the ALJ's decision, therefore rendering the ALJ's decision unsupported by substantial evidence. ECF No. 12-1 at 12-16; ECF No. 17 at 2-4.[4] The Commissioner argues that the new evidence does not affect the ALJ's decision because it does not relate to the relevant time period. ECF No. 16 at 5-6.

**A.  Treatment Records from Dr. Cortisaan Brass**

On August 13, 2015, after the ALJ rendered his decision, Dr. Brass saw Gurnett in consultation for his myalgia and arthralgias. Tr. 28. Dr. Brass noted Gurnett's past medical history of vision problems, fibromyalgia, nausea, narcolepsy, sleep apnea, chronic depression, anxiety, and insomnia. *Id.* He also described trigger points on Gurnett's triceps, brachioradialis, and quadriceps. *Id.* Dr. Brass assessed Gurnett with fatigue and myalgia and ordered several tests to determine the presence of infection, autoimmune disorder, and/or other root causes for Gurnett's unresolved pain. Tr. 30-31.

On September 10, 2015, Dr. Brass ordered a muscle biopsy after initial test results were inconclusive regarding the etiology of Gurnett's unresolved fatigue and muscle pain. Tr. 32-33. On December 17, 2015, Dr. Brass reviewed muscle biopsy results from which he identified excess mitochondria in the muscle and increased cytochrome C activity. Tr. 34. Dr. Brass opined that Gurnett could have mitochondrial dysfunction and noted that he was "awaiting EM studies." *Id.* Dr. Brass gave Gurnett mitochondrial supplementation information, suggested exercises, and provided contacts for a local support group. Tr. 36. On January 26, 2016, Gurnett submitted Dr.

---

[4] Gurnett advances other arguments that he believes warrant reversal of the Commissioner's decision. ECF No. 12 at 16-23; ECF No. 17 at 4-6. The Court will not address those arguments, however, because it disposes of this matter based on the Appeals Council's error.

5

Brass's treatment records dated August 13, 2015, September 10, 2015, and December 17, 2015, to the Appeals Council in support of his request for review of the ALJ's decision. Tr. 8-101.

### B. Appeals Council Decision

On October 16, 2017, the Appeals Council denied Gurnett's request for review of the ALJ's decision and stated:

> we considered the reasons you disagree with the [ALJ's] decision and the additional evidence listed on the enclosed Order of Appeals Council. We considered whether the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record. We found that this information does not provide a basis for changing the [ALJ's] decision. . . .
>
> We also looked at office treatment records from Cortisaan Brass, M.D., dated August 13, 2015 through September 30, 2015 (42 pages) and dated August 13, 2015 through December 30, 2015 (52 pages), and office treatment records from Pain Treatment Consultants, dated July 2, 2015 through October 8, 2015 (17 pages). The [ALJ] decided your case through June 25, 2015. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before June 25, 2015.

Tr. 2.

### C. Application

"[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (quoting *Perez v. Chater,* 77 F.3d 41, 45 (2d Cir. 1996)). When reviewing a denial of DIB, the Appeals Council will consider "new and material" evidence if it "relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(b). If the Appeals Council denies review, the ALJ's decision is the SSA's final decision. *See Perez*, 77 F.3d 41, 44 (2d Cir. 1996). On appeal, the reviewing court may not "affirm an administrative action on grounds different from those considered by the

6

agency." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). If the Appeals Council fails to consider new and material evidence, "the proper course for the reviewing court is to remand for reconsideration in light of the new evidence." *McIntire v. Astrue*, 809 F. Supp. 2d 13, 21 (D. Conn. 2010) (citing *Milano v. Apfel,* 98 F. Supp. 2d 209, 216 (D. Conn. 2000)); *see also Seifried ex rel. A.A.B. v. Comm'r of Soc. Sec.*, No. 6:13- CV-0347 LEK/TWD, 2014 WL 4828191 at *4-5 (N.D.N.Y. Sept. 29, 2014).

Evidence is "new" if it is not merely cumulative of what was already in the record and is "material" if it is: (1) relevant to the claimant's condition during the time period for which benefits were denied; and (2) probative, meaning there is a reasonable probability that the new evidence would have influenced the Commissioner to decide the claimant's application differently. *Webb v. Apfel*, No. 98-CV-791, 2000 WL 1269733, at *14 (W.D.N.Y. Feb. 8, 2000) (citing *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1990)). Here, the parties agree that Dr. Brass's treatment records are "new" because they postdate the ALJ's decision and describe a muscle biopsy performed after the ALJ's decision. There is a reasonable probability that the records could have influenced the Commissioner to decide the case differently, because they indicate some level of mitochondrial dysfunction derived from the muscle biopsy. The ALJ discredited Gurnett's testimony regarding the "intensity, persistence and limiting effects of pain or other symptoms" specifically because his statements were "not substantiated by objective medical evidence." Tr. 136.

The Second Circuit has held that "medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely because of timing." *Carrera v. Colvin*, No. 1:13-cv-1414 (GLS/ESH), 2015 WL 1126014, at *8 (N.D.N.Y. Mar. 12, 2015) (quoting *Newbury v. Astrue*, 321 F. App'x 16, 18 n.2 (2d Cir. 2009) (summary order)). This is because "[e]xaminations and testing conducted after the ALJ's decision is rendered may still be relevant if they clarify a pre-hearing

7

disability and/or diagnosis." *Id.* (citation omitted). Thus, the Appeals Council's categorical refusal to consider new and material evidence solely because it was created after the ALJ's decision can constitute reversible error. *Id.* (citing *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) ("Although the new evidence consists of documents generated after the ALJ rendered his decision, this does not necessarily mean that it had no bearing on the Commissioner's evaluation of [the claimant's] claims. To the contrary, the evidence directly supports many of her earlier contentions regarding [the] condition. It strongly suggests that, during the relevant time period, [her] condition was far more serious than previously thought.") and *Sergenton v. Barnhart*, 470 F. Supp. 2d 194, 204 (E.D.N.Y. 2007) (remanding to consider post-hearing diagnostic evidence suggesting impairment was substantially more severe than previously diagnosed)).

It is possible that the new evidence only demonstrates that Gurnett's condition worsened with time, and thus it may be irrelevant to his condition during the time for which benefits were denied. A post-determination diagnosis may indicate only a more recent onset of disability. It is equally possible, however, that the new evidence clarifies a pre-hearing disability and suggests that Gurnett's condition was more serious than previously thought during the relevant time period.

Gurnett argues that the new evidence of mitochondrial dysfunction reveals an existing impairment substantially more severe than those previously diagnosed and considered by the ALJ. ECF No. 12 at 15. The Commissioner contends that the new evidence is not material because the diagnosis was "necessarily contemporaneous" as nothing in the treatment records indicated that mitochondrial dysfunction existed before the ALJ's decision. ECF No. 16 at 6.

A reviewing court cannot assess whether new evidence relates to the period on or before the ALJ's decision. *Carrera*, 2015 WL 1126014, at *10. The Appeals Council's cursory, formulaic rejection of the evidence simply because it was generated after the ALJ's decision,

8

without any legal or factual reasoning, is insufficient. *See* 20 C.F.R. § 404.976(b) ("If [the claimant] submit[s] evidence that does not relate to the period on or before the date of the [ALJ's] hearing decision, the Appeals Council *will explain why* it did not accept the additional evidence[.]") (emphasis added). Accordingly, this matter must be remanded to the Commissioner for reconsideration in light of the new evidence. See *Webster v. Colvin*, 215 F. Supp. 3d 237, 243 (W.D.N.Y 2016) (remanding in part for reconsideration in light of new evidence that the Appeals Council summarily rejected because it was created after the ALJ's decision).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED, the Commissioner's cross Motion for Judgment on the Pleadings (ECF No. 16) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209, F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 14, 2018
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

9